**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, LLC, f/k/a WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 23-CV-_____ |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PANINI S.P.A., | |
| Defendant. | |

Plaintiff World Wrestling Entertainment, LLC (f/k/a World Wrestling Entertainment, Inc.) ("WWE"), by and through its attorneys Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), for its Complaint against Defendant Panini S.p.A. ("Panini") alleges as follows:

**PRELIMINARY STATEMENT**

1.      WWE is a decades-old, U.S.-based professional wrestling operation with a far-reaching global presence.  The company has, over time, built up one of the world's best-known brands in the sports entertainment and professional wrestling business, enabling it to expand into a wide variety of product lines, including apparel, home and office supplies, toys and games, and various accessories.  In light of the prominence and substantial economic value of its brand, WWE rigorously monitors and protects its intellectual property rights; that includes policing and, where appropriate, taking appropriate steps to prevent infringement of those rights.

2.      WWE is compelled to bring this action seeking injunctive and monetary relief in the face of Panini's willful infringement of its intellectual property rights.

3.      More specifically, WWE and Panini entered into a license agreement in early 2022 authorizing Panini to sell, advertise, and distribute certain WWE products described

in that agreement—essentially, WWE-branded physical and digital trading cards, card games, stickers, and collector albums.  The agreement, which is attached hereto as Exhibit A, also required Panini, among other things, to submit proposed ideas for those products to WWE and to secure WWE's approval before selling, advertising, or distribution any such products.  Panini, however, failed to do so in at least two material respects:  it failed to (i) create any prototypes and seek WWE's approval of any items within the "Physical Trading Card Games" or the "Digital Trading Cards" Licensed Product categories of the agreement, and (ii) make approved products in those categories available for sale by June 1, 2022.

4.      As relevant here, the parties' license agreement granted WWE the right to terminate the agreement—immediately—in the event of Panini's failure to "exploit" its rights under the agreement.  On August 25, 2023, WWE invoked its termination right in light of Panini's ongoing failure to exploit its rights under the agreement, thus immediately terminating the agreement.  Once that termination was communicated to Panini, Panini had no further rights to in any way use any WWE intellectual property.

5.      Notwithstanding WWE's valid termination of the parties' license agreement, Panini has, in defiance of WWE's demands, persisted in its efforts to sell, advertise, and distribute WWE products governed by that agreement.  Panini also has continued to market itself as "officially licensed" by WWE when, in fact, it is not.

6.      As a result of Panini's unlawful conduct, WWE is suffering irreparable harm to its business, brand, goodwill, and reputation—a harm that is not only contractually agreed to by Panini in section L(5) of the Agreement, but is also legally presumed where, as here, WWE is likely to succeed on its claims.  Even if not presumed, the irreparable harm here is obvious and severe.  WWE is a brand founded and built on a reputation for and a commitment to

excellence—a reputation that is no longer in its control and could be irreparably tarnished by the conduct of Panini in listing and selling these products without WWE's oversight. Further, it is undeniable that, given the prior association and authorization, consumer confusion is inevitable. And finally, there is a very high likelihood of dilution of the brand because WWE is unable to control the licensing of its marks.

7.     Panini is engaging in willful infringement and dilution of WWE's copyright and trademarks and willful breach of contract, among other violations. WWE therefore brings this action seeking damages arising from, and an injunction prohibiting, Panini's unauthorized and unlawful use of its intellectual property.

## PARTIES

8.     Plaintiff World Wrestling Entertainment, LLC, f/k/a World Wrestling Entertainment, Inc., is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Stamford, Connecticut.

9.     Defendant Panini is an Italian corporation with its principal place of business in Modena, Italy. Panini is a sports and entertainment collectibles company that produces books, stickers, trading cards, and other consumer sports products through its collectible and publishing subsidiaries.

## JURISDICTION AND VENUE

10.     This action arises under the Lanham Act, 17 U.S.C. § 501, *et seq.*, and the statutory and common laws of the State of New York. This Court's jurisdiction is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. The amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

11.     This Court has personal jurisdiction over Panini because it consented by contract to be subject to the jurisdiction of this Court.  *See* Ex. A § N(13).

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(3) and (c)(3), and because the contract at issue specifies that all disputes arising out of it shall be adjudicated in this district.  *See* Ex. A § N(13).

**FACTS**

A.     **WWE's Business Operations and Intellectual Property**

13.     Since at least as early as February 1983, WWE and its previous iterations have provided live and prerecorded wrestling and entertainment events and services (the "WWE Wrestling Services") under various service marks.  Since May 2002, those service marks have included WORLD WRESTLING ENTERTAINMENT®, WWE®, and the WWE logo.

14.     WWE's unique product, for which it coined the term "sports entertainment," is best described as an action-adventure episodic drama akin to an ongoing, ever-developing soap opera based around WWE's distinctive and provocative characters.  WWE creates colorful characters that generally appear under a trademarked name and are distinctively delineated with unique persona, history, storylines, relationships, music, visual appearance, and behavior.

15.     WWE promotes hundreds of live shows each year in arenas and stadiums around the world.  WWE also produces weekly television programs on broadcast and cable television that are distributed around the world, monthly "pay-per-view"/special event programs, and other original content available through a subscription to the WWE Network, which is an online subscription with Peacock.

16.     Ancillary to its sports entertainment programming, WWE engages in an extensive licensing program pursuant to which WWE's copyrighted characters, trademarks, service marks, and other intellectual property rights are depicted on myriad consumer products. WWE exclusively owns or controls all right, title, and interest in the names, likenesses, and rights of publicity for its current wrestlers.  In connection with those rights, WWE has used, advertised, publicized, and presented the WWE Wrestling Services, and related souvenirs, merchandise, and other products ("WWE Merchandise") under the WORLD WRESTLING ENTERTAINMENT® mark and certain other service marks and trademarks (collectively, the "WWE Marks").

17.     The WWE Marks, both currently pending or registered with the United States Patent and Trademark Office, most pertinent to this action are:

| Mark | U.S. Trademark Serial/Registration Nos. |
|---|---|
| WORLD WRESTLING ENTERTAINMENT | 2,818,358; 2,772,677; 2,757,599; 2,754,499; 2,870,426; 2,902,203; 2,917,910; 3,585,170; 3,585,171 |
| WWE | 2,772,683; 3,056,074; 3,541,936; 4,451,697; 3,538,710; 3,489,357; 3,412,176; 3,412,177; 3,541,956; 3,621,017 |
| WWE LOGOS | 4,735,547; 4,731,795; 4,735,546; 4,625,255; 4,727,923; 4,675,657; 4,538,209; 4,689,839; 4,689,835; 4,538,210; 4,614,144; 4,645,471; 4,552,144; 2,757,596; 2,754,495; 2,846,450; 2,799,228; 2,751,436; 2,757,597; 2,765,751; 2,751,437; 4,756,090; 3,412,169; 3,412,170; 3,691,588; 4,220,594; 86/139,905 |
| CODY RHODES | 3,696,328 |
| SUMMERSLAM | 1,884,646; 4,748,785; 2,702,648; 4,052.025; 4,052,026 |
| SHAYNA BASZLER | 6,034,568 |
| SETH ROLLINS | 4,841,810; 86/763,866; 86/808,287 |

| | |
|---|---|
| ROMAN REIGNS | 4,614,890; 86/819,169; 86/819,175 |
| JIMMY USO | 4,096,085 |
| GUNTHER | 97/502,860 |
| BIANCA BELAIR | 88/585,744 |
| DOMINIK MYSTERIO | 90/207,197 |
| CARMELO HAYES | 90/735,294 |
| THE GREAT AMERICAN BASH | 2,109,152; 2,194,671 |
| THE GREAT AMERICAN BASH LOGO | 86/670,933; 86/671,063 |
| ASUKA | 86/753,293 |
| ROXANNE PEREZ | 97359697 |
| THE ROCK | 2,514,522; 2,633,988; 2,572,837; 2,572,838; 86/781, 167; 86/788,029; 86/806,967; 86/806,924 |
| WWE BLOCK LOGOS | 3,042,792; 3,115,074; 3,473,626 |
| JOHN CENA | 2,957,043; 3,169,452; 3,074,517; 3,088,504; 86/787,877; 86/787,885; 86/787,899 |
| KOFI KINGSTON | 3,720,955 |
| LIV MORGAN | 5,880,491 |
| BROCK LESNAR | 97/220,015; 88/752,489 |
| NOAM DAR | 87214298; 5434238 |

18.    Panini has also continued in its unauthorized use of WWE copyrighted works (i.e., photographs of WWE footage) that are currently pending or registered with the United States Copyright Office.

19.    The WWE Marks and copyrights are well known to the public and have come to identify WWE to the public as the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise.

**B.      The WWE-Panini License Agreement**

20.      In March 2022, WWE and Panini entered into the Consumer Product License Agreement (the "License Agreement" or the "Agreement").

21.      Pursuant to the Agreement, WWE granted Panini the right and license to use certain WWE intellectual property approved by WWE in writing under the terms of the Agreement (the "WWE Intellectual Property") in connection with the manufacture, distribution, and sale of certain expressly enumerated products (the "Licensed Products").   Specifically, WWE granted Panini exclusive rights to the following products, each of which are defined in the Agreement:  (i) physical trading cards, (ii) physical trading card games, (iii) physical stickers, and (iv) physical collector albums.   WWE also granted non-exclusive rights to digital trading cards, which are also defined in the Agreement.

22.      As consideration for the rights WWE granted to Panini under the Agreement, Panini agreed to pay WWE ███████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████ .

23.      The Agreement had a term of January 1, 2022 through December 31, 2025, unless terminated earlier pursuant to its terms.

24.      The Agreement identifies several bases for termination.

25.      Under section B(1)(a) of the Agreement, which governed Panini's obligation to make a "good faith effort to exploit rights," "[i]f within three (3) months of the Effective Date of this Agreement, Licensee has failed to take good faith steps to exploit the rights granted to it, including the creation of prototypes of each item of the Licensed Products and seeking to obtain WWE's approval of same, or if Licensee has failed to make the Licensed Products available for sale both in-store and online by no later than June 1, 2022, WWE shall

have the immediate right to: terminate this Agreement; rescind the exclusive nature of any rights granted under this Agreement; or delete individual products from the definition of Licensed Products in subparagraph 1(f), as shall be determined by WWE in its sole discretion."

26.    Furthermore, under section L(l)(a)(ii) of the Agreement, which governed WWE's right of termination under the Agreement, "[i]f three (3) months after the Effective Date of this Agreement by WWE, Licensee failed to take good faith steps to exploit the rights granted to it, including the creation of prototypes of each item of the Licensed Products and seeking to obtain WWE's approval of same, or if Licensee has failed to make the Licensed Products available for sale both in-store and online by no later than June 1, 2022," then WWE shall have the right to terminate the Agreement immediately.

**C.    Panini's Breach of the License Agreement & WWE's Subsequent Termination**

27.    Panini never created any prototypes, or sought to obtain WWE's approval, of any items within the "Physical Trading Card Games" or the "Digital Trading Cards" Licensed Product categories.  Nor were Licensed Products in those categories available for sale by June 1, 2022.  In fact, Panini had not even mentioned working on these items.  Panini's failure to follow through on its contractual obligations negatively affected WWE's total earnings under the Agreement with respect to ████████████████████.

28.    Accordingly, on August 25, 2023, WWE delivered a letter to Panini to formally notify Panini that, pursuant to sections L(l)(a)(ii) and B(l)(a) of the Agreement, WWE was terminating the Agreement for cause (the "Termination Letter"), effective as of the date of the Termination Letter.  The Termination Letter is attached as Exhibit B.

29.     Under the terms of the License Agreement, WWE's termination for cause pursuant to sections L(l)(a)(ii) and B(l)(a) of the Agreement triggered certain obligations by Panini to WWE.  In particular:

(a)     under section L(3) of the Agreement, Panini was required to immediately and permanently discontinue using the WWE Intellectual Property; immediately destroy any films, molds, dies, CDs, electronic data files, patterns, or similar items from which the Licensed Products and advertising materials were made, where any element of the WWE Intellectual Property is an integral part thereof, and immediately terminate all agreements with manufacturers, distributors, and others which relate to the manufacture, sale, distribution, and use of the Licensed products;

(b)     under section L(2) of the Agreement, Panini was required to deliver to WWE at no cost or destroy any remaining inventory of Licensed Product and provide a notarized certificate of destruction to WWE;

(c)     under sections 4 and L(2) of the Agreement, Panini was required to pay WWE ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████; and

(d)     under section 6 of the Agreement, Panini (along with its parent, subsidiaries, affiliates, successors, assigns, and related companies) ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

██████████████████████████████████████████

████  ████  ██  ██  ████  ████  ██  ████  ██  ████  ████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████.

30.     WWE's notice was proper, as it complied with section N(6) of the Agreement.

31.     On August 29, 2023, WWE received a letter from Panini's outside counsel in this matter in which Panini disputed both the validity of and WWE's articulated bases for WWE's termination of the Agreement.  The August 29, 2023 letter is attached as Exhibit C.

32.     On August 31, 2023, WWE, through its outside counsel, emailed a letter to Panini's counsel in response to Panini's August 29, 2023 letter, in which WWE articulated its disagreement with Panini's position and reiterated that Panini may no longer use WWE's intellectual property in any way.  The August 31, 2023 letter is attached as Exhibit D.

**D.     Panini's Unlawful Post-termination Activities**

33.     Notwithstanding WWE's lawful termination of the License Agreement, Panini has infringed, and continues to infringe, on WWE's intellectual property right by, among other things, continuing to sell, advertise, distribute, and/or use certain WWE intellectual property, many of which continue to be listed on Panini's website,[1] without WWE's authorization and in violation of Panini's obligations to WWE under the termination provisions of the License Agreement.  Examples of these infringements, reflected in Exhibit E, include the following:

    (a)     Physical Trading Cards

- 2023 Panini Instant WWE Trading Cards for "The American Nightmare" Cody Rhodes;

- 2023 Panini Instant WWE Trading Cards for Shayna Baszler;

- 2023 Panini Instant WWE Trading Cards for Seth "Freakin" Rollins;

- 2023 Panini Instant WWE Trading Cards for Roman Reigns;

- 2023 Panini Instant WWE Trading Cards for Jimmy Uso;

- 2023 Panini Instant WWE Trading Cards for Gunther;

- 2023 Panini Instant WWE Trading Cards for Bianca Belair;

- 2023 Panini Instant WWE Trading Cards for Dominik Mysterio;

- 2023 Panini Instant WWE Trading Cards for Carmelo Hayes;

- 2022 Chronicles WWE Signatures Red Trading Cards for Noam Dar; and

- a forthcoming 2023 Panini Donruss Elite WWE Trading Card Box (containing eight cards per pack and 20 packs per box).

    (b)     Physical Stickers

- WWE Complete 2022 Sticker Collection – Packet & Starter Pack; and

- WWE Missing Stickers.

34.     Further, Panini has held, and continues to hold, itself out as "officially licensed" by WWE when, in fact, it is not officially licensed by WWE.

---

[1]   By "website," WWE means any web page belonging to Panini, including its subsidiaries and affiliates.

**E.     WWE's Demand That Panini Refrain from Infringing**

35.     On September 8, 2023, WWE, through outside counsel, sent Panini a letter demanding that Panini immediately cease its infringing activity and comply with all of the Agreement's provisions relating to its termination.  That letter, attached as Exhibit F, further demanded that Panini confirm in writing by September 13, 2023, that it would comply with all of the above and any other obligations under the Agreement.

36.     Upon hearing nothing from Panini, and out of concern that WWE's August 31 and September 8 correspondence may have been missed, on September 14, 2023, WWE, through its outside counsel, contacted Panini's counsel by telephone.  Panini's counsel represented that he had not received WWE's prior correspondence dated August 31, 2023, and September 8, 2023.  WWE, through its outside counsel, thereafter followed up via email, attaching WWE's prior communications, in response to which counsel for Panini confirmed that he had previously received, but until September 14 had missed, WWE's written correspondence dated August 31 and September 8, 2023.  Until that point, it seemed possible that Panini might comply with WWE's demands.  WWE requested via email to Panini's counsel that Panini respond to WWE's prior written correspondence by 12:00 PM Eastern Time on September 15, 2023.  That email chain is attached as Exhibit G.

37.     At 12:04 PM Eastern Time on September 15, 2023, WWE, through its outside counsel, contacted Panini's counsel to ask if Panini intended to respond that day.  Panini's counsel responded that Panini likely would not respond until Monday, September 18, 2023.  That email chain is attached as Exhibit H.  In light of this representation and with the hope that WWE and Panini could resolve Panini's ongoing infringement without court intervention, WWE waited to commence this action and seek emergency relief from the Court.

38.     Also on September 15, 2023, and notwithstanding WWE's termination of the Agreement, Panini emailed WWE with a forecast reflecting projections through August 2023 for sales of products bearing WWE's intellectual property.  This email, along with the email to which it responds, is attached as Exhibit I.  WWE did not reply to this email, as it was awaiting the receipt of Panini's counsel's promised response.

39.     On September 18, 2023, WWE received a letter from Panini's counsel, in which Panini did not agree to comply with WWE's demands and instead, again, contested the validity of WWE's termination of the Agreement.  The September 18, 2023 letter is attached as Exhibit J.  Upon receipt of this letter, it became clear that Panini's ongoing infringement was intentional and would not cease without a court order.

40.     Panini has incorrectly contended that (a) the Agreement did not require Panini to have launched a product for each category of "Licensed Products" for which Panini acquired rights; (b) even if the Agreement so required, Panini satisfied the "digital trading cards" requirement by including images of Panini's Prizm cards on Panini's website dating to the time of the launch of the physical trading cards, and satisfied the "physical trading card games" requirement by offering Box Wars and/or Pack Wars with the Prizm cards; and (c) because the Agreement was signed on March 14, 2022, Panini had only 77 days to launch new products to meet the June 1, 2022 deadline.

(a)     Section B(1)(a) of the Agreement required Panini to "to take good faith steps to exploit the rights granted to it, including creation of prototypes of *each item of the Licensed Products*."  (Emphasis added).

(b)     The Box Wars and Pack Wars items are not "Physical Trading Card Games" within the meaning of the Agreement.  Instead, Box Wars and Pack Wars are terms

used to describe an activity invented by consumers whereby, for example, consumers collectively buy a box of cards and come up with a method for divvying the cards or packs up amongst the purchasers.  Box/Pack Wars are not a physical game product created by Panini using the WWE Intellectual Property.  Consequently, neither the Box Wars nor Pack War items constitutes a "Physical Trading Card Game" or other "Licensed Product" as contemplated by the Agreement.  Panini never submitted prototypes of "Physical Trading Card Games" within the meaning of the Agreement for WWE's approval and thereafter launched such products.

(c)     Nor do photograph images of Panini's physical Prizm cards constitute "Digital Trading Cards" within the meaning of the Agreement.  Instead, the photograph images are merely Advertising Material (as defined in the Agreement) of the physical trading cards themselves.  The images themselves have never been available for sale as a digital product and were never advertised or sold as such.  Panini itself has never recognized, treated, or contemplated these images to be digital products, because, per Section 4(b)(i) of the Agreement, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.

(d)     Because the June 1, 2022 deadline to make the Licensed Products available for sale both in-store and online was an agreed-upon term in a binding term sheet that preceded the Agreement and which was executed by the parties in July 2021, Panini had approximately 11 months to meet the deadline.

41.     To date, Panini has refused to comply with its obligations under the termination of the License Agreement, including:  its infringing conduct has not stopped, and it has failed to pay WWE what it owes under the Agreement.

42.     Panini is well aware of the goodwill represented and symbolized by the WWE Intellectual Property and WWE's rights to that intellectual property, and knows that likely consumers of Panini's infringing products have long recognized and relied upon the WWE Intellectual Property to identify products and services associated with or sponsored by WWE. That recognition permeates the entire Agreement.  Panini even contractually acknowledged as much.  For instance, in section B(4) it says, "Licensee acknowledges WWE's legitimate and reasonable interest in protecting the value of the WWE Intellectual Property and maximizing the effectiveness of WWE's advertising, promotion and distribution efforts by segmenting the classes of trade into which its licensees sell."  Further, section E(1) says, "Licensee recognizes the exclusive right of WWE to all WWE Intellectual Property and any translations thereof and will not use such WWE Intellectual Property or any such translations in any manner or for any reason except as expressly contemplated by this Agreement."

43.     Panini's unauthorized use of the WWE Intellectual Property and blatant disregard of its obligations under the License Agreement is a clear and deliberate attempt to trade on WWE's valuable reputation and goodwill.  Moreover, because Panini is WWE's ex-licensee, likelihood of confusion of Panini's products with the WWE brand is not only presumed under the law, but highly likely as a matter of fact.

44.     In particular, the consuming public is likely to be confused by Panini's use of the WWE Intellectual Property in the manner described above and is likely to believe that the

infringing products derive from WWE or are associated or affiliated with, and/or endorsed or sponsored by, WWE.

**F.     WWE's Injuries Resulting from Panini's Infringement and Violations**

45.     As a direct and proximate result of Panini's misconduct, WWE has been substantially damaged by, at a minimum, the engenderment of confusion among consumers, and the dilution of its intellectual property, including, but not limited to, WWE's trademarks and copyrights, such as the WWE name, the WWE logo, and the names and logos of WWE events, as well as the names, nicknames, logos, expressions, and other distinctive and identifying indicia of WWE talent.  Further, Panini's misconduct is in direct violation of its obligations under the Agreement.  Panini's breach of the Agreement and failure to exercise its exclusive right and obligation to produce physical trading card games has prevented WWE from capitalizing on the opportunity to grow its brand and collect ██████████████████████████ ██████.

46.     As a result of Panini's misappropriation of the WWE Intellectual Property, Panini has caused, and will continue to cause, irreparable injury to WWE and have substantially damaged the value of the WWE Intellectual Property.  WWE currently has no control over Panini's unauthorized use of the WWE Intellectual Property and any potential damage it may cause to the WWE brand and reputation and thereby is not in control of its own reputation.

47.     In addition, Panini has enriched itself at WWE's expense by advertising and selling a product that appropriates and exploits WWE's intellectual property as well as WWE's goodwill and reputation.

48.     Panini has already acknowledged and agreed pursuant to section N(6) of the Agreement that WWE's intellectual property "possesses a special, unique and extraordinary character that cannot be replaced" or "adequately compensated for in money damages" and, thus,

that any breach of the Agreement by Panini "will cause irreparable injury and harm to the WWE."

### FIRST CLAIM
**(Breach of the Approval Process in the License Agreement)**

49.     WWE repeats and realleges paragraphs 1 through 48 above.

50.     In March 2022, WWE and Panini entered into the License Agreement pursuant to which WWE granted Panini the right to use certain of its intellectual property, including the WWE Marks in connection with the manufacture, distribution, and sale of WWE physical trading cards, WWE physical trading card games, WWE physical stickers, WWE physical collector albums, and WWE digital trading cards.

51.     WWE has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the License Agreement.

52.     Pursuant to the License Agreement, Panini was obligated to, among other things:

(a)     create and submit for WWE's approval, physical trading card games;

(b)     create and submit for WWE's approval, digital trading cards; and

(c)     make the Licensed Products available for sale both in-store and online by June 1, 2022.

53.     Panini breached its respective obligations under the License Agreement by:

(a)     failing to create, or to submit for WWE's approval, physical trading card games;

(b)     failing to create, or to submit for WWE's approval, digital trading cards; and

(c)     failing to make physical trading card games and digital trading cards available for sale by June 1, 2022.

54.     WWE has suffered, and continues to suffer, significant damages as a result of Panini's breach of contract.

55.     Upon information and belief, Panini's actions were deliberate, willful, and in conscious disregard of WWE's rights.

56.     WWE gave Panini notice of its infringing conduct on September 8, 2023.

### SECOND CLAIM
**(Breach of the Termination Provisions of the License Agreement)**

57.     WWE repeats and realleges paragraphs 1 through 56 above.

58.     In March 2022, WWE and Panini entered into the License Agreement pursuant to which WWE granted Panini the right to use certain of its intellectual property, including the WWE Marks in connection with the manufacture, distribution, and sale of WWE physical trading cards, WWE physical trading card games, WWE physical stickers, WWE physical collector albums, and WWE digital trading cards.

59.     WWE has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the License Agreement.

60.     Pursuant to the License Agreement, upon termination of the agreement, Panini was obligated to, among other things:

(a)     immediately and permanently discontinue manufacturing, selling, advertising, distributing, and using the Licensed Products and advertising materials;

(b)     immediately and permanently discontinue using the WWE Intellectual Property;

(c)     deliver to WWE any remaining inventory of Licensed Products and provide a notarized certificate of destruction to WWE;

(d)     ██████████████████████████████████████████ ████████ ;

(e)     ██████████████████████████████████████████ ████████████████████████ ; and

(f)     pay any other outstanding debts owed by Panini to WWE.

61.     Panini breached its respective obligations under the License Agreement by:

(a)     upon information and belief, continuing to manufacture WWE trading cards following the termination of the License;

(b)     upon information and belief, failing to destroy items, including packaging, that use the WWE Intellectual Property;

(c)     continuing to use the WWE Intellectual Property following the termination of the License, including advertising and otherwise using the WWE Intellectual Property on Panini's website;

(d)     continuing to sell and/or failing to return to WWE all Licensed Products after expiration of the License Agreement; and

(e)     failing to pay ████████  ████████  ████████ , and other outstanding debts owed to WWE.

62.     WWE has suffered, and continues to suffer, significant damages as a result of Panini's breach of contract.

63.     Upon information and belief, Panini's actions were deliberate, willful, and in conscious disregard of WWE's rights.

64.     WWE gave Panini notice of its infringing conduct on September 8, 2023.

**THIRD CLAIM**
**(Unfair Competition and False Designation of Origin**
**under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

65.     WWE repeats and realleges paragraphs 1 through 64 above.

66.     In addition to the registered WWE Marks, WWE owns valuable common law trademark rights in the WWE Marks, which, by virtue of its use by WWE, in connection with the promotion and sale of goods and services, has gained widespread consumer recognition, and has developed valuable goodwill associated therewith.

67.     Upon information and belief, Panini has used, is using, and/or imminently intends to use the WWE Marks in interstate commerce, without the consent of WWE, to identify Panini's goods and/or in connection with the advertising and promotion of such goods.

68.     Panini's conduct as alleged above constitutes the unauthorized use in commerce of the WWE Marks in connection with the infringing products and has caused and/or is likely to cause confusion, mistake, or deception of the public as to (i) the affiliation, connection, and/or association of WWE with Panini and the infringing products; (ii) the origin of the infringing products; and/or (iii) the sponsorship, endorsement, or approval of the infringing products by WWE, in each case in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     Upon information and belief, Panini's actions were deliberate, willful, and in conscious disregard of WWE's rights.

70. Panini's conduct as alleged above has caused and/or will cause WWE to suffer injury, for which it has no adequate remedy at law.

71. Pursuant to 15 U.S.C. § 1117, WWE is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Panini's profits, and to the costs of this action and to attorneys' fees.

### FOURTH CLAIM
### (Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1))

72. WWE repeats and realleges paragraphs 1 through 71 above.

73. WWE owns the WWE Marks.

74. The WWE Marks are valid and subsisting.

75. Upon information and belief, Panini has used, is using, and/or imminently intends to use the WWE Marks in interstate commerce, without the consent of WWE, in connection with the sale of goods and/or in connection with the advertising and promotion of such goods.

76. Panini's conduct as alleged above constitutes the unauthorized use in commerce in the United States of the WWE Marks in connection with the sale, offering for sale, distribution, or advertising of its products, and has caused and/or is likely to cause confusion or mistake or deception of the public as to (i) the affiliation, connection, and/or association with WWE of the infringing products; (ii) the origin of the infringing products; and/or (iii) the sponsorship, endorsement, or approval of the infringing products by WWE, in each case a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

77. Upon information and belief, Panini's actions were deliberate, willful, and in conscious disregard of WWE's rights. Notwithstanding WWE's multiple demands that Panini cease the infringing activity and provide assurances that the infringing conduct has ceased,

Panini continues to use the WWE Intellectual Property and has failed to provide the requested assurances.

78.     Panini's conduct as alleged above has caused and/or will imminently cause WWE to suffer irreparable harm, for which it has no adequate remedy at law.

79.     Pursuant to 15 U.S.C. § 1117, WWE is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Panini's profits, and to the costs of this action and to attorneys' fees.

## FIFTH CLAIM
**(Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))**

80.     WWE repeats and realleges paragraphs 1 through 79 above.

81.     The WWE Marks are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and WWE has built up valuable goodwill in the WWE Marks.  The WWE Marks have enjoyed such distinction and fame since long before Panini commenced unauthorized use of the WWE Marks.

82.     Upon information and belief, Panini has used, is using, and/or intends to use the WWE Marks in interstate commerce in connection with the advertising and promotion of goods and services sold or offered by Panini.

83.     Panini's use of the WWE Marks has caused actual harm and is likely to cause harm to WWE by diluting and weakening the unique and distinctive significance and quality of the WWE Marks to identify WWE's goods and services and by tarnishing the WWE name and WWE Marks in the minds of consumers.

84.     By reason of the foregoing, Panini has violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

85.     Upon information and belief, Panini's actions were deliberate, willful, and in conscious disregard of WWE's rights.

86.     Panini's conduct as alleged above has caused and/or will cause WWE to suffer injury, for which it has no adequate remedy at law.

87.     Pursuant to 15 U.S.C. § 1117, WWE is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Panini's profits, to the costs of this action, and to attorneys' fees.

## SIXTH CLAIM
### (Common Law Trademark Infringement)

88.     WWE repeats and realleges paragraphs 1 through 87 above.

89.     Panini's conduct as alleged above constitutes infringement and misappropriation of the WWE Marks in violation of WWE's rights under common law and in equity.

90.     Upon information and belief, Panini's actions were deliberate, willful, and in conscious disregard of WWE's rights.

91.     Panini's conduct as alleged above has caused and/or will cause WWE to suffer injury, for which it has no adequate remedy at law.

92.     WWE is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Panini's profits, to the costs of this action, and to attorneys' fees.

## SEVENTH CLAIM
### (Trademark Dilution and Injury to Business Reputation under New York Gen. Bus. Law § 360-1)

93.     WWE repeats and realleges paragraphs 1 through 92 above.

94.     WWE is the exclusive owner of the WWE Marks.

95.     The WWE Marks are distinctive and famous within the meaning of New York General Business Law § 360-1, and had gained widespread publicity and recognition prior to the acts committed by Panini.

96.     Panini's use of the WWE Marks has diluted, or is likely to dilute, and unless restrained will continue to dilute, the distinctive quality of the marks by destroying the exclusive association between the WWE Marks and WWE, or otherwise lessening the capacity of the marks to identify legitimate products, and otherwise injure the business reputation of WWE.

97.     Panini has acted willfully and deliberately and have profited and been unjustly enriched by sales it would not otherwise have made but for its unlawful conduct.

98.     By virtue of the foregoing, Panini has caused WWE to suffer injuries for which it is entitled to recover compensatory damages, including, but not limited to, WWE's lost profits.

99.     Panini's acts are causing and continue to cause WWE irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill.  This irreparable harm to WWE will continue, without any adequate remedy at law, unless and until Panini's unlawful conduct is enjoined by this Court.

100.    WWE has been and will continue to be harmed by Panini's conduct in an amount to be determined at trial.

101.    All of these acts constitute trademark dilution under New York General Business Law § 360-1.

## EIGHTH CLAIM
### (Common Law Unfair Competition)

102.    WWE repeats and realleges paragraphs 1 through 101 above.

103.    Upon information and belief, by using the WWE Marks in commerce without authorization by WWE, Panini knowingly and willfully is confusing consumers by creating the false and misleading impression that Panini and its infringing products are related to, affiliated with, or connected with WWE.

104.    Upon information and belief, Panini's deliberate and continued use of the WWE Marks in connection with the marketing, advertising, promotion, and/or distribution of its infringing products was done in bad faith with the intent to unfairly benefit from the expense, time, effort, and labor expended by WWE in developing and promoting its WWE Marks and products.

105.    By reason of the foregoing, Panini's conduct constitutes willful and deliberate false designation of origin, false description and representation, and unfair competition, in violation of WWE's rights under common law and in equity.

106.    Upon information and belief, Panini's actions were, and continue to be, deliberate, willful, and in conscious disregard of WWE's rights.

107.    Panini's conduct as alleged above has caused and/or will cause WWE to suffer injury, for which it has no adequate remedy at law.

108.    Furthermore, WWE is entitled to injunctive relief, actual damages in an amount to be determined at trial, and to Panini's profits attributable to their unlawful conduct.

## NINTH CLAIM
### (Copyright Infringement under 17 U.S.C. § 501)

109.    WWE repeats and realleges paragraphs 1 through 108 above.

110.    WWE owns valid and enforceable copyrights in photographs displayed on Panini's website.

111.    As the owner of the registered copyrights, WWE holds the exclusive rights to the copyrighted material under 17 U.S.C. § 106.

112.    Upon information and belief, Panini directly infringed WWE's rights because Panini has continued to engage in the following acts for a commercial purpose: (a) reproduced one or more of WWE's copyrighted material in violation of 17 U.S.C. § 106(1); (b) prepared derivative works based upon one or more of those copyrighted material in violation of 17 U.S.C. § 106(2); and (c) distributed copies of one or more of the copyrighted material and/or unauthorized derivative works to the public in violation of § 106(3).

113.    Through Panini's conduct alleged herein, including Panini's reproduction, distribution, public display, and sale of WWE's copyrighted material without WWE's permission, Panini has directly infringed WWE's exclusive rights in the copyrighted material in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

114.    Upon information and belief, Panini's actions were, and continue to be, deliberate, willful, and in conscious disregard of WWE's rights.

115.    Upon information and belief, Panini's infringing conduct alleged herein was and continues to be willful and with full knowledge of WWE's rights in the copyrighted material, and has enabled Panini illegally to obtain profit therefrom.

116.    Panini's conduct as alleged above has caused and/or will imminently cause WWE to suffer irreparable harm, for which it has no adequate remedy at law.

117.    As a direct and proximate result of Panini's infringing conduct alleged herein, WWE has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), WWE is also entitled to recovery of Panini's profits attributable to Panini's infringing conduct alleged herein, including from any and all sales of the copyrighted

material and products incorporating or embodying the copyrighted material, and an accounting of and a constructive trust with respect to such profits.

118.   Alternatively, WWE is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Panini's willful infringing conduct for each of WWE's works that Panini has infringed, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

119.   Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## TENTH CLAIM
### (Unjust Enrichment)

120.    WWE repeats and realleges paragraphs 1 through 119 above.

121.   By the acts alleged above, Panini has been unjustly enriched by its unlawful conduct at the expense of WWE.  Panini's acts have unjustly enriched and wrongfully benefited Panini, in an amount to be determined at trial and to which WWE is rightfully entitled.

## PRAYER FOR RELIEF

WHEREFORE, WWE requests judgment against Panini as follows:

1.   Preliminarily and permanently enjoining and restraining Panini, its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from:

(a)   imitating, copying, or making unauthorized use of the WWE Intellectual Property, including, without limitation, the famous WWE Marks;

(b)   manufacturing, producing, distributing, advertising, promoting, selling, or offering for sale the infringing products and any product bearing the WWE Intellectual Property, including, without limitation, the famous WWE Marks;

(c)     using the WWE Intellectual Property, including, without limitation, the famous WWE Marks, or any mark or design confusingly similar thereto in connection with the promotion, advertisement, display, sale, offering for sale, or distribution of any product;

(d)     making any designation of origin, descriptions, or representations indicating or suggesting that WWE is the source or sponsor of, or in any way has endorsed or is affiliated with Panini, or any product manufactured, distributed, promoted, marketed, or sold by Panini;

(e)     engaging in any conduct that tends to dilute, tarnish, or blur the distinctive quality of the WWE Intellectual Property, including, without limitation, the famous WWE Marks; and

(f)     aiding or abetting any party in the commission of the acts specified in subparagraphs (a)–(e) above;

2.     Ordering Panini to return or destroy all existing inventory of the Licensed Products and any associated advertising, promotional, marketing, or other materials that include the WWE Intellectual Property, including, without limitation, the famous WWE Marks;

3.     Ordering Panini to account to WWE for all gains, profits, savings, and advantages obtained by it as a result of its unlawful conduct, and awarding to WWE restitution in the amount of all such gains, profits, savings, and advantages;

4.     Ordering Panini to pay WWE ███████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████, and (iii) any other outstanding debts owed by Panini to WWE;

5.     Awarding to WWE damages resulting from Panini's unlawful conduct, including the amount by which Panini were unjustly enriched, in an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 1117;

6.     Awarding to WWE Panini's profits attributable to its unlawful conduct, in an amount to be determined at trial and increased in the Court's discretion pursuant to 15 U.S.C. § 1117;

7.     Awarding to WWE reasonable attorneys' fees, together with the costs and disbursements of this action and prejudgment interest;

8.     Awarding WWE punitive damages in an amount sufficient to deter other and future similar conduct by Panini, in view of Panini's wanton and deliberate unlawful acts; and

9.     Granting WWE such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

WWE hereby demands a trial by jury of all issues so triable.

Dated: September 20, 2023
      New York, New York

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:

Daniel J. Kramer (dkramer@paulweiss.com)
Gregory F. Laufer (glaufer@paulweiss.com)
Emily A. Vance (evance@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for World Wrestling Entertainment, LLC*