**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, LLC f/k/a WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>    Plaintiff,<br><br> -against-<br><br>PANINI S.P.A.,<br><br>    Defendant. | Case No. 1:23-cv-08371-LGS<br><br>[rel. 1:23-cv-08324-LGS] |

**DEFENDANT PANINI S.P.A.'S OPPOSITION TO ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER**

Panini S.p.A. ("Panini) respectfully submits this memorandum of law in opposition to the September 21, 2023, Order to Show Cause for a Temporary Restraining Order of Plaintiff World Wrestling Entertainment, LLC (f/k/a World Wrestling Entertainment, Inc.) ("WWE").  As set forth below, WWE knew about the conduct it now says warrants immediate termination for at least fifteen months.  Not only did WWE not complain, it praised Panini's performance.  WWE's course of conduct is wholly inconsistent with its merits arguments, as Panini will show in its opposition to WWE's preliminary injunction.  For present purposes, however, WWE's lengthy delay in enforcing its purported termination rights demonstrates that there is no credible threat of irreparable harm that requires a temporary restraining order during the short period of time before the merits of WWE's preliminary injunction motion can be decided in an orderly fashion on a full record.

## Argument

A "temporary restraining order is 'an extraordinary remedy never awarded as of right.'" *Bragg v. Jordan*, No. 1:23-CV-3032 (MKV), 2023 WL 2999971, at *5 (S.D.N.Y. Apr. 19, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), *appeal dismissed sub nom.*, *Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).  As with a preliminary injunction, a party seeking a TRO must "show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).

Emergency relief that would disturb the "the last uncontested status between the parties preceding the present controversy" is subject to an even higher standard. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37–38 (2d Cir. 2018).  Because the purpose of such relief is to "preserve the relative positions of the parties" pending the outcome of the litigation,

1

*id.*, an injunction altering the status quo requires a "strong showing" that movant will face irreparable harm absent an injunction, *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 472 F. Supp. 3d 88, 92 (S.D.N.Y. 2020).

"'The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a' temporary restraining order." *Coronel v. Decker*, 449 F. Supp. 3d 274, 280–81 (S.D.N.Y. 2020) (alteration in original) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). Among other things, the harm must be "neither remote nor speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks and citation omitted).

Here, WWE's course of conduct since June 2022 wholly undermines its current claims that a TRO is necessary to avoid irreparable harm. For this reason, the Order to Show Cause should be denied.

The Consumer Products License Agreement (the "License Agreement") at issue was signed on March 14, 2022, with an effective date of January 1, 2022. The License Agreement includes a section titled "Good Faith Effort to Exploit Rights." It provides, among other things, that "if Licensee has failed to make the Licensed Products available for sale both in-store and online by no later than June 1, 2022, WWE shall have the immediate right to terminate this Agreement." Compl. Ex. A, Section B(1)(a). The termination provision in Section L of the agreement includes parallel language. Compl. Ex. A, Section L(1)(a)(ii).

The record before the Court is undisputed that June 1, 2022 came and went and WWE never complained that Panini had failed to meet its obligation to exploit its rights in good faith by failing to offer some Licensed Products for sale by the specified deadline. Declaration of D. J. Kazmierczak ("Kazmierczak Decl.") ¶¶ 12-16, 18. The record before the Court is also undisputed

that for the rest of 2022 and into 2023, Panini systematically provided WWE with detailed information about the products that it was launching pursuant to the License Agreement and—again—WWE never suggested that Panini was somehow failing to exploit its rights for certain Licensed Products, let alone that termination might be warranted as a result. Kazmierczak Decl. ¶¶ 5-15. Indeed, at no point during this time period did WWE identify *any* deficiencies by Panini, complain about failure to launch products or engage in an any particular activities, or protest about any alleged failures by Panini to perform under the License Agreement. Kazmierczak Decl. ¶¶ 12-16. Instead, WWE consistently accepted royalty payments from Panini provided pursuant to the License Agreement well in excess of the minimum guaranteed royalty payments. Kazmierczak Decl. ¶¶ 18-19. And WWE routinely complimented Panini's performance, described Panini as "best in class," and had only positive things to say about Panini tripling business for WWE as compared to its prior trading card licensee. Kazmierczak Decl. ¶¶ 17, 19.

Only on August 25, 2023—without warning and ***fifteen months after the June 1, 2022 deadline***—did WWE purport to terminate the License Agreement based on Panini's alleged failure to exploit the rights as required. This termination letter, which there is good reason to believe is pretextual,[1] claimed that Panini had not engaged in good faith efforts under the License Agreement to exploit the licensed rights to the Licensed Product categories of "Physical Trading Card Games" and "Digital Trading Cards." Compl. Ex. B at 2. Panini disputes both contentions, which is why it filed a complaint seeking a (i) declaratory judgment that WWE's purported termination is invalid and ineffective and (ii) injunctive relief enjoining WWE from enforcing its attempts to terminate

---

[1] *See, e.g.*, David Rumsey, *Fanatics Nabbing WWE Rights In Latest Win Over Panini*, Front Office Sports (Sept. 20, 2023), https://frontofficesports.com/fanatics-nabbing-wwe-rights-in-latest-win-over-panini/ ("It's the second time in as many months that Fanatics has undercut Panini and convinced a partner to start a deal early").

the License Agreement.  Panini is prepared to show that the WWE products it launched in April and May 2022 satisfied its contractual obligations to exploit WWE's intellectual property rights, an interpretation confirmed by the parties' subsequent course of performance.  And, regardless, WWE is not permitted to outwardly embrace and approve a deal, and performance under a deal, while secretly "reserving to itself the ability to terminate the Contract whenever it wished" due to conditions of which it was already well aware.  *Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1089, 1098 (S.D.N.Y. 1989).  "The general principle of equitable estoppel prevents one party from enforcing rights which would result in a fraud or injustice upon a second party who, in justifiable reliance upon the former parties' words or conduct, had been misled into acting upon the belief that such enforcement would not be sought." *Id.*  Panini welcomes the opportunity to address these contractual issues in due course.

Pending a hearing on these merits issues, however, there is no justification for a TRO, which requires a clear and convincing showing of the kind of irreparable harm that WWE cannot make.  The essence of WWE's termination argument is that Panini was supposed to start selling certain categories of products by June 1, 2022.  If these issues really mattered, WWE should have sought relief at the time it claims the deadline was missed.  And if, as WWE's conduct shows, these issues do not actually threaten irreparable (if any) harm, there is no justification for emergency relief based on a purported termination that did not come for fifteen months.  *See Life Techs. Corp. v. AB Sciex Pte. Ltd.*, 2011 WL 1419612, at *7 (S.D.N.Y. Apr. 11, 2011) ("'[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.' This is because a 'failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable

injury.'" (first quoting *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998), then quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985))).

WWE's delay is especially indefensible when, in the interim between June 2022 and August 2023, WWE was accepting performance; cashing millions of dollars of royalty checks; signing off on product schedules with full knowledge of what they did and did not include; praising Panini for its good work; inducing Panini to continue to invest in the relationship—and only then claiming Panini's performance was not just inadequate, but termination-worthy, based on claims that are entirely inconsistent with the prior course of conduct. Nor, contrary to WWE's suggestion, *see* Memo. of Law in Supp. of WWE's Mot. for Prelim. Inj. & TRO at 17-18, does a non-waiver provision in the License Agreement dispositively trump the obvious significance of WWE's knowing and intentional conduct over well more than a year. *See Lee v. Wright*, 108 A.D.2d 678, 680 (1st Dep't 1985) ("Contrary to its conclusion that the non-waiver clause in the lease precluded any finding of waiver, it has long been the rule that parties may waive a 'no-waiver' . . . Knowing acceptance of rent without any effort to terminate the lease justifies the inference that the landlord has chosen to hold the tenant to the lease and therefore waived any violation."); *In re Caldor, Inc.-NY*, 217 B.R. 121, 133 (Bankr. S.D.N.Y. 1998) ("[T]he existence of a non-waiver clause in a contract does not by itself preclude the waiver of a provision of, or right under, the contract."); *see also Kamco Supply Corp. v. On the Right Track, LLC*, 149 A.D.3d 275, 285-86 (2d Dep't 2017) (equitably estopping a party from asserting a no-oral-waiver provision in agreement due to defendants' "continued acceptance of" plaintiffs' "persistent and repeated failure to meet" the terms of the contract).

In short, WWE's actual conduct is flatly inconsistent with its current litigation claims of irreparable harm. At a minimum, WWE's conduct shows that the risk of irreparable harm is not

so great that a TRO is necessary to protect WWE during the short period of time before its preliminary injunction can be heard by the Court and decided on a full record.[2]

Finally, in suggesting that an immediate TRO is required to prevent irreparable harm and customer confusion, WWE's arguments turn the status quo on its head. Under the License Agreement, WWE has abundant oversight and control rights. *See, e.g.*, Compl. Ex. A, Section 7 (requiring Panini to provide WWE with distribution and marketing plans to be mutually approved, and quarterly financial reports), Section A(2)(b)-(j) (providing WWE with rights to approve, "in its sole and unfettered discretion," products, advertising and promotional materials, commercial announcements, and press releases before they may be released, providing WWE a right to inspect to ensure quality of goods is being maintained, and affording WWE the right to revoke its approval), Section D(1)-(4) (providing WWE audit rights). Since the agreement was signed in 2022, Panini's financial performance has been excellent, and WWE never complained about deficiencies of any sort. On these facts, there is no credible argument that WWE's goodwill would be impaired if, while a preliminary injunction proceeding moves forward in an orderly fashion, Panini were simply to continue operating in the same successful manner.

The Second Circuit's decision in *Arthur Guinness & Sons, PLC v. Sterling Publ'g Co.*, 732 F.2d 1095 (2d Cir. 1984), is instructive. In *Guinness*, the defendant, Sterling, had been the long-term licensee for publishing the Guinness Book of World Records. *Id.* Guinness purported to terminate Sterling's license, which Sterling disputed, and Sterling proceeded to produce the next

---

[2] WWE notes that in section L(5) Panini agreed that a breach of the License Agreement would result in irreparable harm. WWE Mem. at 8. But WWE concedes that this provision is, at best, just "entitled to weight." *Id.* Here, for all the reasons shown above, the probative value of WWE's own delay in seeking to exercise its purported termination rights far outweighs whatever force this provision has. In any event, by its terms, this provision applies only where there is a breach, which Panini does not concede.

edition of the Book of World Records, following "the same procedure" it had used for previous editions. *Id.* Guiness sued and moved for a preliminary injunction, which the district court denied, and the Second Circuit affirmed. *Id.*

Because Sterling had been Guinness's licensee for several years, the Second Circuit could not "perceive" how Sterling's publication of the latest edition "could irreparably have harmed its licensor unless the product was so inferior that it could severely injure Guinness's reputation in the United States." *Id.* Thus, even though Guinness "may yet prevail" on the merits of the termination issue, it had "failed to establish [its] right to a preliminary injunction." *Id.* at 1101-02. The Second Circuit emphasized that denying Guinness's requested relief was "entirely consistent with the purpose of injunctive relief" because Sterling's publication of the latest edition—despite Guinness's purported termination of the license—"maintain[ed] a status quo unbroken" for years. *Id.* at 1101-02.

Similarly, in *Kahala Franchising, LLC v. Real Faith, LLC*, 2022 WL 1605377 (C.D. Cal. May 20, 2022), a trademark owner sued a franchisee, seeking a preliminary injunction preventing the continued use of the "Pinkberry" mark at the franchisee's frozen yogurt store. The court recognized that the Lanham Act's rebuttable presumption of irreparable harm in a trademark case applied. *Id.* at *4. But the court refused to grant preliminary injunctive relief in the face of facts showing that the store owner was continuing to operate as a successful franchise, with many customers visiting the store and no indication that it was running the franchise in a way that failed to meet the trademark owner's standards and expectations regarding the Pinkberry brand, such as by, for example, selling inferior yogurt or allowing the premises to fall into disrepair. *Id.* at *4-5. The court distinguished another case involving a terminated holdover franchisee where a preliminary injunction issued based on evidence that the franchisee had ***not*** complied with upkeep

and maintenance of the store so as to conform to standards in the franchise agreement. *Id.* at *4 (citing *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020 (C.D. Cal. 2011) (also rejecting claim irreparable harm follows from loss of ability to control use of mark without regard to actual harm)).

The reasoning of these cases applies with full force here.  It is WWE that seeks to upset the status quo before the Court can rule on a complete record after full briefing on WWE's preliminary injunction motion.  And in the interim, there is no credible basis to find that either the WWE, or customers, face a genuine risk of irreparable harm if the parties simply operate as they have been with great success.

## Conclusion

For the reasons set forth above, Panini respectfully requests that the Court (i) deny the Order to Show Cause for a Temporary Restraining Order, and (ii) set a schedule for Panini to file an opposition to WWE's preliminary injunction motion with a hearing to follow.  In the interim, the status quo should be left undisturbed.

Dated: September 22, 2023

Respectfully submitted,

/s/ Eric J. Brenner

| | |
|---|---|
| James P. Denvir* | David Boies |
| Richard A. Feinstein* | Eric J. Brenner |
| William J. Harvey | **Boies Schiller Flexner LLP** |
| **Boies Schiller Flexner LLP** | 55 Hudson Yards |
| 1401 New York Ave, NW | 20th Floor |
| Washington, DC  20005 | New York, NY  10001 |
| (202) 237-2727 | (212) 446-2300 |
| (202) 237-6131 (fax) | (212) 446-2350 (fax) |
| jdenvir@bsfllp.com | dboies@bsfllp.com |
| rfeinstein@bsfllp.com | ebrenner@bsfllp.com |
| wharvey@bsfllp.com | |

                Stuart H. Singer\*
                Sabria A. McElroy\*
                Jason Hilborn\*
                **Boies Schiller Flexner LLP**
                401 East Las Olas Blvd.
                Suite 1200
                Fort Lauderdale, FL  33301
                (954) 356-0011
                (954) 356-0022 (fax)
                ssinger@bsfllp.com
                smcelroy@bsfllp.com
                jhilborn@bsfllp.com

                \**pro hac vice forthcoming*

                *Counsel for Panini S.p.A.*