UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, LLC f/k/a WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> -against- <br><br> PANINI S.P.A., <br><br> Defendant. | Case No. 1:23-cv-08371-LGS <br><br> [rel. 1:23-cv-08324-LGS] |

### **DECLARATION OF D. J. KAZMIERCZAK**

Pursuant to 28 U.S.C. § 1746, I, D. J. Kazmierczak, under penalty of perjury, declare as follows:

1.  My name is D. J. Kazmierczak. I am over the age of twenty-one and am competent to make this declaration. The facts set forth here are based on my personal knowledge.

2.  I am employed by Panini America, Inc. ("Panini America") as its Senior Vice President of Operations. Panini America is a subsidiary of Panini S.p.A. (together with Panini America, "Panini"), the Italian parent company, which entered into the Consumer Products License Agreement ("Agreement") with World Wrestling Entertainment, Inc. ("WWE") in March 2022. I am familiar with the sports trading card industry, and Panini's contractual relationship with WWE. The information contained in this Declaration is within my personal knowledge.

3.  Panini S.p.A. negotiated the License Agreement with WWE, and entered into the License Agreement with WWE.

4.  Panini America substantially operationalized the WWE License Agreement,

1

developing and submitting products for approval, launching the products, and maintaining communications with WWE concerning sales and the reception of the products by consumers.

5. Panini was routinely and consistently communicating with WWE about the Agreement and performance of the products licensed under the Agreement.

6. Such contact included routine weekly calls and submissions for approval of products to be launched pursuant to the Agreement. I personally regularly participated in these weekly calls and submissions for approval of products to be launched.

7. My primary personal role in the relationship has been keeping WWE updated concerning the performance of the products—sales, consumer reactions, and indicators of success of the products such as secondary market sales prices that indicated interest and enthusiasm for the products developed and sold under the License Agreement.

8. I personally sent quarterly updates on the performance of the products licensed under the Agreement, including sales figures and unit shipping numbers of the products available for sale.

9. Panini kept WWE up-to-date and informed about all the products designed and launched during the course of performance under the Agreement.

10. Panini provided WWE with preliminary plans for product release calendars for the upcoming year, both for 2022 in advance of the final long-form License Agreement being signed and at the beginning of 2023, disclosing planned product launches in advance and offering WWE the opportunity for input.

11. Panini also provided WWE with information specifying the performance of specific products being sold pursuant to the Agreement, and date back to at least May 2022, providing information on the WWE Prizm trading cards that had been launched on April 21, 2022.

12. At no point, until we were blindsided by the termination letter dated August 25, 2023, did anyone at WWE complain or criticize, or express concern or dismay, about the products or types of products Panini had launched or not launched.

13. WWE never responded to planned product release calendars with any pushback or expression from WWE that it believed Panini was not fulfilling its contract obligation, much less not launching a trading card game or digital trading cards.

14. During the course of my many interactions with WWE dealing with operations under the Agreement, no WWE personnel referenced any doubt about the fact that the contractual obligations were being fulfilled, and I am not aware of a concern that WWE believed Panini was failing to meet an obligation being expressed to any other Panini employees.

15. WWE did not raise the prospect of additional particular types of products after June 1, 2022, nor at any point question the existence of or whether Panini intended to prototype, seek approval of, and launch product types fundamentally different than what Panini had launched to that point.

16. Indeed, at no point did WWE identify or complain about any deficiencies with Panini's performance under the Agreement, or identify any failures to perform or live up to Panini's part of the deal.

17. Instead, WWE routinely complimented Panini's performance, described Panini as "best in class," and had only positive things to say about Panini tripling the business for WWE.

18. Throughout the course of the running of the Agreement, Panini has routinely paid royalty payments as provided for pursuant to the Agreement based on the sales of the WWE-licensed products, and WWE has accepted those royalty payments without objection or complaint.

19. Panini has substantially exceeded the minimum guaranteed royalty payments

required under the Agreement.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 22, 2023.

                                                                                              _____
                                                                                              D. J. Kazmierczak