UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WORLD WRESTLING ENTERTAINMENT,
LLC, f/k/a WORLD WRESTLING
ENTERTAINMENT, INC.,

           Plaintiff,

v.

PANINI S.P.A.,

           Defendant.

Case No. 23-CV-8371(LGS)

### DECLARATION OF SCOTT ZANGHELLINI IN SUPPORT OF WWE'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

I, Scott Zanghellini, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I am SVP, Head of Revenue Strategy and Development for World Wrestling Entertainment, LLC ("WWE"), as successor in interest to World Wrestling Entertainment, Inc. I have been employed with WWE since April 2021. I submit this declaration in support of WWE's motion for a preliminary injunction and temporary restraining order, and make this declaration based on personal knowledge and in consultation with colleagues of mine at WWE.

2.    Since at least as early as February 1983, WWE and its previous iterations have provided live and prerecorded wrestling and entertainment events and services (the "WWE Wrestling Services") under various service marks. Since May 2002, those service marks have included WORLD WRESTLING ENTERTAINMENT®, WWE®, and the WWE logo.

3.    WWE's unique product, for which it coined the term "sports entertainment," is best described as an action-adventure episodic drama akin to an ongoing, ever-developing soap opera based around WWE's distinctive and provocative characters. WWE creates colorful characters

that generally appear under a trademarked name and are distinctively delineated with unique persona, history, storyline, relationships, music, visual appearance, and behavior.

4. WWE promotes hundreds of live shows each year in arenas and stadiums around the world. WWE also produces weekly television programs on broadcast and cable television that are distributed around the world, monthly "pay-per-view"/special event programs and other original content available through a subscription to the WWE Network, which is an online subscription with Peacock, the streaming service from NBCUniversal.

5. Ancillary to its sports entertainment programming, WWE engages in an extensive licensing program pursuant to which WWE's copyrighted characters, trademarks, service marks, and other intellectual property rights are depicted on myriad consumer products.

6. WWE exclusively owns or controls all right, title, and interest in the names, likenesses, and rights of publicity for its current wrestlers. In connection with those rights, WWE has used, advertised, publicized, and presented the WWE Wrestling Services, and related souvenirs, merchandise, and other products ("WWE Merchandise") under the WORLD WRESTLING ENTERTAINMENT® mark and certain other service marks and trademarks (collectively, the "WWE Marks").

7. The WWE Marks have acquired strong secondary meaning in the marketplace as a result of the tremendous fame and success of WWE, as well as widespread and unsolicited press and media coverage that WWE products and services have enjoyed.

8. In July 2021, following a series of negotiations, WWE executed a binding term sheet with Panini S.p.A. ("Panini"), which summarized the principal terms related to the parties' business relationship as licensor and licensee, respectively, of WWE intellectual property ("Term Sheet").

9. In March 2022, pursuant to the Term Sheet, WWE and Panini entered into the Consumer Product License Agreement (the "Agreement").

10. Pursuant to the Agreement, WWE granted Panini the right and license to use certain WWE intellectual property approved by WWE in writing under the terms of the Agreement in connection with the manufacture, distribution, and sale of certain expressly enumerated products (the "Licensed Products"). Specifically, WWE granted Panini exclusive rights to the following products, each of which are defined in the Agreement: (i) Physical Trading Cards, (ii) Physical Trading Card Games, (iii) Physical Stickers, and (iv) Physical Collector Albums. WWE also granted non-exclusive rights to Digital Trading Cards, which are also defined in the Agreement.

11. As consideration of the rights WWE granted to Panini under the Agreement, Panini agreed to pay WWE, or its agent, certain ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

12. The Agreement has a term of January 1, 2022 through December 31, 2025, unless terminated earlier pursuant to the terms of the Agreement.

13. The Agreement expressly enumerates several ways that WWE could lawfully terminate it, including if Panini failed to take good faith steps to exploit the rights granted to it under the Agreement, such as by (i) failing to create prototypes of each item of the Licensed Products and submit them for WWE's approval or (ii) failing to make the Licensed Products available for sale both in-store and online by June 1, 2022.

14. The June 1, 2022 deadline to make the Licensed Products available for sale both in-store and online also was an agreed-upon term in the binding Term Sheet that preceded the Agreement. Accordingly, Panini had approximately 11 months to meet this deadline.

15. Panini never created any prototypes, or sought to obtain WWE's approval, of any items within the "Physical Trading Card Games" or the "Digital Trading Cards" Licensed Product categories. Nor were Licensed Products in those categories available for sale by June 1, 2022. Such failures under the Agreement negatively affected WWE's total earnings with respect to payments payable to WWE.

16. Accordingly, on August 25, 2023, WWE notified Panini that it was terminating the Agreement for cause.

17. WWE's notice was proper, as it complied with section N(6) of the Agreement.

18. Under the terms of the Agreement, WWE's termination for cause triggered certain obligations by Panini to WWE, including, but not limited to:

(a) under section L(3) of the Agreement, Panini was required to immediately and permanently discontinue using the WWE intellectual property; immediately destroy any films, molds, dies, CDs, electronic data files, patterns, or similar items from which the Licensed Products and advertising materials were made, where any element of the WWE intellectual property is an integral part thereof; and immediately terminate all agreements with manufacturers, distributors, and others which relate to the manufacture, sale, distribution, and use of the Licensed Products;

(b) under section L(2) of the Agreement, Panini was required to deliver to WWE at no cost or destroy (at WWE's sole discretion) any remaining inventory of Licensed Product and provide a notarized certificate of destruction to WWE; and

(c) under sections 4 and L(2) of the Agreement, Panini was required to pay WWE ████████████████████████████████████████████████████████████████████████████████████████████████ ████████, and (iii) any other outstanding debts owed by Panini to WWE.

19. To date, notwithstanding the terms of the Agreement, Panini has not discontinued using the WWE intellectual property. Nor has Panini delivered to WWE any remaining inventory of Licensed Products (as WWE specifically requested multiple times in writing, consistent with its rights under the express terms of the Agreement). Panini also has not remitted to WWE any of the required payments in light of the termination of the Agreement.

20. Instead, Panini has disputed the validity of WWE's termination. In particular, on August 29, 2023, and on September 18, 2023, Panini has sent letters to WWE and/or WWE's outside counsel contesting both the validity of and WWE's articulated bases for WWE's termination of the Agreement. And on September 15, 2023, Panini contacted WWE with a forecast reflecting projections through August 2023 for sales of products bearing WWE's intellectual property that Panini no longer has authorization to use in light of WWE's termination of the Agreement.

21. I understand that, in disputing the bases for WWE's termination of the Agreement, Panini has contended, among other things, that Panini satisfied the "digital trading cards" requirement by including images of Panini's Prizm cards on Panini's website dating to the time of the launch of the physical trading cards, and satisfied the "physical trading card games" requirement by offering Box Wars and/or Pack Wars with the Prizm cards. But none of these items fall within the "Physical Trading Card Games" or the "Digital Trading Cards" Licensed Product categories as defined in Schedule A of the Agreement.

(a) The Box Wars and Pack Wars items are not "Physical Trading Card Games" within the meaning of the Agreement. Instead, Box Wars and Pack Wars are terms used to describe an activity invented by consumers whereby, for example, consumers collectively buy a box of cards and come up with a method for divvying the cards or packs up amongst the purchasers.

Box/Pack Wars are not a physical game product created by Panini using WWE intellectual property. Consequently, neither the Box Wars nor Pack War items constitutes a "Physical Trading Card Game" or other "Licensed Product" as contemplated by the Agreement. Indeed, Panini never submitted prototypes of "Physical Trading Card Games" within the meaning of the Agreement for WWE's approval and thereafter launched such products.

(b)     Nor do photograph images of Panini's physical Prizm cards constitute "Digital Trading Cards" within the meaning of the Agreement. Instead, the photograph images are merely Advertising Material (as defined in the Agreement) of the physical trading cards themselves. The images themselves have never been available for sale as a digital product and were never advertised or sold as such. This is further supported by the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Therefore, according to Panini's own statements, the products advertised on Panini's website were never Digital Trading Cards, but rather Physical Trading Cards.

22.     Since WWE terminated the Agreement, Panini has continued to, at a minimum, sell, advertise, and distribute the previously Licensed Products and use WWE intellectual property

on its website without WWE's authorization and in blatant disregard of the termination provisions of the Agreement.

23. Panini has continued in its unauthorized use of the following WWE trademarks, both currently pending or registered with the United States Patent and Trademark Office (as well as internationally):

| Mark | U.S. Trademark Serial/Registration Nos. |
| --- | --- |
| WORLD WRESTLING ENTERTAINMENT | 2,818,358; 2,772,677; 2,757,599; 2,754,499; 2,870,426; 2,902,203; 2,917,910; 3,585,170; 3,585,171 |
| WWE | 2,772,683; 3,056,074; 3,541,936; 4,451,697; 3,538,710; 3,489,357; 3,412,176; 3,412,177; 3,541,956; 3,621,017 |
| WWE LOGOS | 4,735,547; 4,731,795; 4,735,546; 4,625,255; 4,727,923; 4,675,657; 4,538,209; 4,689,839; 4,689,835; 4,538,210; 4,614,144; 4,645,471; 4,552,144; 2,757,596; 2,754,495; 2,846,450; 2,799,228; 2,751,436; 2,757,597; 2,765,751; 2,751,437; 4,756,090; 3,412,169; 3,412,170; 3,691,588; 4,220,594; 86/139,905 |
| CODY RHODES | 3,696,328 |
| SUMMERSLAM | 1,884,646; 4,748,785; 2,702,648; 4,052.025; 4,052,026 |
| SHAYNA BASZLER | 6,034,568 |
| SETH ROLLINS | 4,841,810; 86/763,866; 86/808,287 |
| ROMAN REIGNS | 4,614,890; 86/819,169; 86/819,175 |
| JIMMY USO | 4,096,085 |
| GUNTHER | 97/502,860 |
| BIANCA BELAIR | 88/585,744 |
| DOMINIK MYSTERIO | 90/207,197 |
| CARMELO HAYES | 90/735,294 |
| THE GREAT AMERICAN BASH | 2,109,152; 2,194,671 |
| THE GREAT AMERICAN BASH LOGO | 86/670,933; 86/671,063 |

| ASUKA | 86/753,293 |
|---|---|
| ROXANNE PEREZ | 97359697 |
| THE ROCK | 2,514,522; 2,633,988; 2,572,837; 2,572,838; 86/781, 167; 86/788,029; 86/806,967; 86/806,924 |
| WWE BLOCK LOGOS | 3,042,792; 3,115,074; 3,473,626 |
| JOHN CENA | 2,957,043; 3,169,452; 3,074,517; 3,088,504; 86/787,877; 86/787,885; 86/787,899 |
| KOFI KINGSTON | 3,720,955 |
| LIV MORGAN | 5,880,491 |
| BROCK LESNAR | 97/220,015; 88/752,489 |
| NOAM DAR | 87214298; 5434238 |

24. Panini has also continued in its unauthorized use of WWE copyrighted works (i.e., photographs of WWE footage) that are currently pending or registered with the United States Copyright Office and which were obtained within five years of first publication.

25. Panini also has continued to represent on its website that it is "officially licensed" by WWE when, in fact, it is not.

26. Panini's trading cards and stickers compete in the same market in which WWE's products are, or will soon be, sold and target the same consumers. Future licensees with rights to use the WWE intellectual property on trading cards and stickers will directly compete with Panini if Panini's infringing conduct continues.

27. Panini's failure to comply with the termination provisions of the Agreement is intentional. After WWE terminated the Agreement, WWE received a letter dated August 29, 2023, from Panini's outside counsel, in which Panini claimed that WWE's conduct was "unwarranted and illegal" and averred that "Panini will contest any action that WWE takes to effectuate the unlawful purported termination of Panini's rights under the Agreement." Panini's counsel further claimed—incorrectly—that Panini had complied with its obligations to submit for approval and

launch Physical Trading Card Games and Digital Trading Cards. Contrary to its obligations under the Agreement, Panini did not submit prototypes of these products for WWE's approval.

28. Because Panini is using the WWE intellectual property without authorization, Panini's use of the WWE intellectual property is no longer subject to the strict standards and approval process that WWE requires of its licensees.

29. If WWE is not able to regain control of its intellectual property, the potential harm to WWE's reputation and business is immeasurable. WWE does not lightly make the decision to license—and authorize others to display and use—its intellectual property on products; rather, such endorsement is provided only after WWE has determined to its satisfaction that the product is of high quality, comports with the standards of WWE's own goods and services, and is reflective of the quality and goodwill associated with WWE and its brand. Panini's unauthorized use of the WWE intellectual property thus jeopardizes the trust and credibility of WWE, unfairly putting WWE's reputation at risk.

30. Panini's unauthorized use of the WWE intellectual property also damages WWE's relationships with its exclusive licensees and business partners, makes it more difficult for WWE to grant use of its intellectual property to potential licensees, and damages the value of the licenses and endorsements that WWE offers. If unauthorized third parties are able to obtain the benefits of using WWE's valuable and recognizable intellectual property without a proper license from WWE, then third parties that might otherwise be interested in entering into such agreements with WWE may be discouraged from doing so, resulting in loss of revenue and market share for the WWE brand and diminishment of the brand in the eyes of consumers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 20, 2023 in Stamford, Connecticut.

_____
Scott Zanghellini